UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

September 2, 2020

LETTER TO COUNSEL:

    RE:    *Deborah B. v. Andrew M. Saul, Commissioner of Social Security*
              Civil Case No. TJS-19-3016

Dear Counsel:

On October 16, 2019, Plaintiff Deborah B. petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 11 & 12.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand this case for further proceedings. This letter explains my rationale.

Deborah B. protectively filed an application for DIB on August 12, 2013, and alleged a disability onset date of March 6, 2010. (Tr. 173-74.) Her application was denied initially and on reconsideration. (Tr. 102-105, 109-10.) A hearing was held before an Administrative Law Judge ("ALJ") on March 14, 2016, (Tr. 34-73), and the ALJ found that Deborah B. was not disabled under the Social Security Act (Tr. 17-29). The Appeals Council denied Deborah B.'s request for review. (Tr. 1-6.) Deborah B. appealed to this Court, which remanded her case on April 4, 2018. (Tr. 471-76.) The Appeals Council issued a remand order on December 14, 2018. (Tr. 479.)

On May 6, 2019, a different ALJ presided over a second administrative hearing. (Tr. 415-61.) At the conclusion of the hearing, the ALJ issued a written decision dated June 25, 2019, which found that Deborah B. was not disabled under the Social Security Act. (Tr. 390-402.) This is the Commissioner's final decision. *See* 20 C.F.R. § 404.984(d).

The ALJ evaluated Deborah B.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Deborah B. "did not engage in substantial gainful activity during the period from her alleged onset date of March 6, 2010 through her date last insured of June 30, 2012." (Tr. 393.) At step two, the ALJ

---

[1] This case was assigned to me on July 9, 2020.

found that Deborah B. suffered from the following severe impairments: degenerative disc disease, osteoarthritis, major depressive disorder and anxiety disorder. (*Id.*) At step three, the ALJ found Deborah B.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 394-96.) Considering Deborah B.'s impairments, the ALJ determined that she retained the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) except after approximately 30 minutes of standing or walking, she would need to sit for approximately 1-2 minutes; and after approximately 30 minutes of sitting, she would need to stand for approximately 1-2 minutes. She can occasionally reach overhead with the bilateral upper extremities; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl. She can never work at unprotected heights or around moving mechanical parts; and she is limited to occasional vibration. In addition, she is limited to performing simple, routine, and repetitive tasks, and making simple work-related decisions. (i.e., SVP 1 or 2 positions). She can occasionally interact with and respond appropriately to supervisors, coworkers and the general public.

(Tr. 396.)

At step four, the ALJ determined that Deborah B. was unable to perform any past relevant work. (Tr. 400.) At step five, relying on the testimony of a vocational expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Deborah B. can perform, including charge account clerk, assembler, and surveillance systems monitor. (Tr. 402.) Therefore, the ALJ found that Deborah B. was not disabled under the Social Security Act. (*Id.*)

Deborah B. presents two arguments in this appeal. First, she argues that the ALJ's RFC determination does not account for her moderate difficulties in maintaining concentration, persistence, and pace, and therefore runs afoul of the Fourth Circuit's decision in *Mascio*, 780 F.3d 632. ECF No. 11-1 at 5-6. Second, she argues that the ALJ improperly deferred to the non-final decision of the first ALJ. *Id.* at 6-7. Both arguments have merit.

Deborah B. argues that the ALJ did not evaluate her mental impairments in accordance with *Mascio*, 780 F.3d 632. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the [claimant] to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). This is because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* Where an ALJ finds that a claimant has limitations in concentration, persistence, and pace, the ALJ is required to incorporate these limitations into the claimant's RFC or explain why they do not "translate into [such] a limitation." *Id.*

As part of the step three analysis, the ALJ found that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation." (Tr. 395.) The ALJ made

2

two points in connection with this finding. First, Deborah B. "testified that she experienced anxiety, which impaired her ability to concentrate."[2] (*Id.*) Second, Deborah B. reported in her adult function report that she "had difficulty handling stress and change in routine." (*Id.*) The ALJ went on to note, however, that there was "no medical evidence that limited the claimant's ability to maintain appropriate pace on tasks" and no evidence that supported a finding that her concentration was more than moderately limited. (*Id.*) There is ample evidence in the record to support the ALJ's finding that Deborah B. had a moderate limitation in concentration during the relevant time period. (Tr. 63, 84, 214, 232, 444, 627, 631, 633.)

Later in the decision, the ALJ explained that the RFC properly accounted for Deborah B.'s moderate limitations in maintaining concentration, persistence, and pace. (Tr. 400.) The ALJ explained:

> Although the evidence of record supports no more than moderate limitation in [Deborah B.'s ability to maintain concentration, persistence, or pace], the undersigned further notes that there was no medical evidence that limited the claimant's ability to maintain appropriate pace on tasks prior to the claimant's date last insured. For example, March 2012 treatment records noted that she was alert and that her mood and thought process were normal (Exhibit 4F at 3). In addition, September 2012 clinical assessment indicated that she was negative for psychiatric symptoms (Exhibit 4F at 10). Furthermore, in the claimant's adult function report, she reported that she spent all day performing routine activities for herself and her disabled husband (Exhibit 6E at 3), yet it contained no limits on the pace at which she was able to execute those activities from a mental standpoint. In February 2017, approximately 4 years after her date last insured, she denied having any problems with her concentration (Exhibit 12F at 20). Therefore, the undersigned finds no evidence prior to the date last insured of June 30, 2012, which limited the claimant's ability to maintain pace on task, or that the claimant was more limited in her ability to maintain concentration, persistence, or pace, than indicated in the residual functional capacity assessment above.

(*Id.*)

The ALJ did not adequately explain how the RFC accounted for Deborah B.'s moderate difficulties with concentration. The ALJ's only explanation for why Deborah B.'s RFC adequately accommodated her difficulties with concentration is that "[i]n February 2017, approximately 4 years after her date last insured, she denied having any problems with concentration (Exhibit 12F at 20)." (*Id.*) There are a number of problems with this statement.

First, the ALJ stated earlier in the decision that she could not "consider the medical evidence of record after June 30, 2012 when determining the claimant's eligibility for Title II disability benefits," and that she therefore would "not evaluate the claimant's treatment records after her date last insured." (Tr. 398.) This is incorrect. "Medical evaluations made after a

---

[2] Deborah B. also testified that her difficulty with concentration "has a lot to do with [her] pain." (Tr. 63.)

3

claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured]." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *see also Foshee v. Astrue*, No. 4:11-2912-RMG, 2013 WL 310657, at *2 (D.S.C. Jan. 25, 2013) ("Although the claimant for DIB must establish the presence of a disability prior to her last date insured, medical evidence produced after the date last insured is generally admissible if such evidence 'permits an inference of linkage with the claimant's pre-[date last insured] condition.'") (quoting *Bird*, 699 F.3d at 341).

Second, after the ALJ stated that medical evidence after June 30, 2012 would not be considered (Tr. 398), the ALJ went on to actually consider evidence from February 2017. (Tr. 400.) The ALJ even cited this evidence to support a critical finding. It is unclear how the ALJ could refuse to consider medical evidence from 2017 in connection with evaluating Deborah B.'s RFC while simultaneously relying on the same evidence to explain why the RFC complied with *Mascio*. The parties did not raise this issue in their briefs.

Third, the evidence that the ALJ cited from February 2017 does not support her finding regarding Deborah B.'s ability to concentrate. It is true that on February 28, 2017, Deborah B. denied experiencing problems with concentration. (Tr. 635.) She also reported that she had "seen an improvement in the last month" and that her depression had improved. (*Id.*) As the ALJ noted, this evidence post-dates Deborah B.'s date last insured by about four years. (Tr. 400). What the ALJ did not mention, however, was that on January 31, 2017, Deborah B. reported that "[s]he has felt consistently depressed almost every day for the last 3 months" and that she had "poor concentration." (Tr. 631.) To the extent that evidence from February 2017 is relevant to Deborah B.'s case, similar evidence from January 2017 (one month closer in time to her date last insured) is also relevant. Yet the ALJ did not cite the January 2017 treatment note.

It may be that the ALJ did not consider this evidence. Or perhaps the ALJ "cherry-picked" evidence to justify an outcome. But either way, the ALJ's explanation does not comply with governing law. *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The Court must remand this case a second time for additional explanation. The ALJ must explain how Deborah B.'s moderate difficulty with concentration is accounted for in the RFC, or why no limitation was necessary.[3] In light of this remand order, the Court declines to consider whether the ALJ's discussion of the previous ALJ's non-final decision was harmless error. On remand, the ALJ should consider Deborah B's application de novo. *See Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (holding that "nothing in [Social Security Acquiescence Ruling 00-

---

[3] Putting aside the irregularities in the ALJ's decision regarding evidence that post-dated June 30, 2012, the ALJ's explanation of Deborah B.'s moderate difficulties in persistence and pace appears to be adequate under *Mascio*, 780 F.3d 632, 634 and *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that an ALJ adequately explained the RFC's mental limitations where the RFC did not include a specific limitation addressing the plaintiff's moderate limitation in concentration, persistence, or pace).

1(4), 65 Fed. Reg. 1936-01 (Jan. 12, 2000)] or in our circuit precedent, indicates that findings in prior non-final decisions are entitled to any weight") (citing 20 C.F.R. §§ 404.981, 416.1481).

      For the reasons set forth herein, both parties' motions for summary judgment (ECF Nos. 11 & 12) are **DENIED**. Pursuant to sentence four of 42 U.S.C.§405(g), the Commissioner's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. The Clerk is directed to **CLOSE** this case.

      Sincerely yours,

      /s/
      Timothy J. Sullivan
      United States Magistrate Judge